*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FERRANTI/WAUN, Minors.

UNPUBLISHED
October 6, 2022

No. 360301
Sanilac Circuit Court
Family Division
LC No. 19-036298-NA

Before: RONAYNE KRAUSE, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Respondent was diagnosed as bipolar when she was a teenager and has been hospitalized at least 20 times for the condition. Respondent's struggles with her mental health prompted the Department of Health and Human Services to remove her children, AF and KW, from her care. When respondent took her medication and engaged in services she did well enough that the Department returned the children to her care for a time. But then respondent stopped taking her medication or engaging in services and her condition worsened. Given this instability and the danger it posed to the children, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. BACKGROUND

The initial petition in this case was filed in August 2019 due to concerns about respondent's mental health, substance abuse, and respondent's lack of benefit from services provided by Sanilac County Community Mental Health. The trial court authorized that petition and entered an order of adjudication. AF and KW were placed with their father, but eventually returned to respondent in March 2020 because she showed a marked benefit from her service plan.

The Department filed another petition in June 2020 to remove the children from respondent's care. This petition alleged that respondent's mental health was dangerous for the children. It also alleged police were called when respondent and her mother fought in the children's presence. As for respondent's mental health, earlier in June a doctor petitioned for respondent to be hospitalized because she was not reliable with her medication and she posed a danger to the children because she was in a manic state. The trial court took jurisdiction of the children in August 2020, with a dispositional order following soon after.

-1-

Respondent did not have stable housing throughout this case, moving repeatedly as the case progressed. Her mental health continued to be a major concern, resulting in multiple hospitalizations. Respondent also started to miss visits with the children the longer the case progressed. After May 2021 (when respondent stopped attending community-mental-health services) respondent's interaction with the children was minimal and her once-strong bond with the children had weakened to the point that one of the Department's witnesses opined that no bond existed at the time of the termination hearing. She also allowed the children to have contact with her new husband and her mother despite a no-contact order between respondent's mother and the children and the Department had not yet approved the new husband for contact with the children. Respondent also continually used marijuana despite her doctor's order not to because of her mental-health medications. On one occasion, she also tested positive for amphetamines, and she claimed no knowledge of why she tested positive; a psychiatrist testified that her prescribed medications should not cause any false positives.

The Department filed a petition to terminate respondent's parental rights due to her mental-health issues and her inability to care for the children. The trial court terminated respondent's parental rights and this appeal followed.

## II. ANALYSIS

## A. STATUTORY GROUNDS

Respondent argues that the trial court erred by finding statutory grounds to terminate her parental rights. This Court "reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014). "We defer to the special ability of the trial court to judge the credibility of witnesses." *Id*. at 711.

"Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). The trial court found, in relevant part, statutory grounds to terminate respondent's parental rights because it concluded that

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> > (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The trial court entered the second order of adjudication in August 2020, with a dispositional order coming soon after. That occurred more than 182 days before the trial court's order terminating respondents' parental rights.

The reasons for the second adjudication were respondent's unstable mental health and concerns that she could not adequately care for the children. The record shows that respondent had continual mental-health issues throughout this case that resulted in repeated hospitalizations. The evidence established that respondent was a good parent when she was stable, and the fact that she admitted herself to the hospital on one occasion reflected good insight into her illness. However, while hospitalized, respondent could not care for the children, and the evidence suggested that even with the benefit of medication, there is a reasonable likelihood that additional hospitalizations would occur in the future. She appears to have significant mental-health issues that would interfere with her ability to care for the children and these problems have progressed as the case went on, in part because respondent stopped taking her medications. Thus, we are not definitely and firmly convinced that the trial court erred by finding statutory grounds to terminate respondent's parental rights under subsection (c)(*i*). Having found one statutory ground to terminate respondent's parental rights, we decline to address the other grounds on which the trial court relied. See *In re Ellis*, 294 Mich App at 32.

## B. BEST INTERESTS

Respondent next argues that the trial court erred by finding that termination of her parental rights was in the children's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40-41; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). Again, we must "defer to the special ability of the trial court to judge the credibility of witnesses." *White*, 303 Mich App at 711.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. The trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. When the trial court makes its best-interests determination, it may rely upon evidence in the entire record, including the evidence establishing the statutory grounds for termination. *In re Trejo*, 462 Mich 341, 353-354; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83. In cases concerned with multiple children, the trial court must determine each child's interests individually. *In re Olive/Metts*, 297 Mich App at 43-44. But a trial court is not required to make redundant best-interest findings for each child when the best interests of the children do not significantly differ. *In re White*, 303 Mich App at 715-716.

Parents should not lose their children merely because they have a mental illness. As the trial court properly stated, the fact that respondent has been diagnosed with bipolar "is not something that in and of itself would make her an unfit parent." However, respondent's particular

mental-health issues show that she cannot adequately care for the children. The children are developmentally delayed and have special needs, which respondent seemed not to appreciate fully. The evidence showed that the children needed stability, and although respondent did not specifically place them in danger, respondent's inconsistency in parenting and visitation was itself harming the children and had undermined any bond between respondent and the children. Notwithstanding the commendability of respondent seeking voluntary hospitalization, the evidence of her history of hospitalizations and regarding her illness strongly suggested that further episodes were sadly both inevitable and impossible to predict with specificity. Additionally, respondent did not have stable housing and she did not listen to the advice of her doctors because she stopped taking her medications and continued to smoke marijuana, which she was repeatedly and extensively told not to do because it could interfere with her medications and could cause anxiety or psychosis. Respondent also had a poor visitation history and seemed to engage less with the children as the case continued. In short, we are not definitely and firmly convinced that the trial court made a mistake in predicting that, sooner or later, respondent's instability would recur and harm the children, notwithstanding her good intentions.

Additionally, respondent and the children certainly had a bond when this case started, but it lessened over time to the point that one of the Department's witnesses opined at the termination hearing that they no longer shared a bond. The children's need for permanence and stability also weighs in favor of termination. We note that although the children are placed with their father and doing well in that placement, placement with a child's other parent is not considered "relative placement" under MCL 712A.13a(1)(j), *In re Mota*, 334 Mich App 300, 321-322; 964 NW2d 881 (2020), and therefore the children's placement with their father does not statutorily weigh against termination under MCR 712A.19a(8)(a). Furthermore, we agree with the foster care worker's explanation that a custody order through the Friend of the Court that gave respondent no actual parenting time would not facilitate much of a relationship between respondent and the children, and as noted, respondent's instability itself was harming the children. Returning the children to respondent's care would not be a stable environment given her lack of consistent and adequate housing and repeated hospitalizations. Terminating respondent's parental rights would also give the children more permanency than reunification proceedings that could last for an unknown amount of time. Thus, the trial court did not err by finding that termination of respondent's parental rights was in the children's best interests.

## III. CONCLUSION

For the reasons stated in this opinion, the trial court's order terminating respondent's parental rights is affirmed.

/s/ Amy Ronayne Krause
/s/ Kathleen Jansen
/s/ Brock A. Swartzle